UNITED STATES DISTRICT COURT
FILED
JUL 15 2025
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

UNIDED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Index No.: 6:24-CV-6252-MAV

In the Matter of the Claim of Notice of Claim

JOHN SENKA

CAROLA DANCE

JOHN J. SENKA O/B/O J[redacted] V. S[redacted]

CAROLA DANCE O/B/O J[redacted] V. S[redacted]

AMENDED COMPLAINT

Against

ARKPORT CENTRAL SCHOOL DISTRICT

JESSE HARPER

CLAIRE SMITH

---

We, John Senka and Carola L. Dance, make the following Amended Complaint, which we swear is true under

penalty of perjury: 1) This order is being amended under a decision and order is dated June 17th,2025 signed by Honorable Meredith A Vacca and is being timely filed as an amended complaint.

1) The Plaintiff John Senka resides or has a place of business or mailing address at John Senka, 4 E.

Washington Street, Bath, NY 14810 : Telephone number (607) 368-3461

2) The Plaintiff Carola Dance resides at or has a place of business or mailing address at John Senka, 4

E. Washington Street, Bath, NY 14810: Telephone number (607) 368-6594.

3) The Defendant is ARKPORT CENTRAL SCHOOL DISTRICT, mailing address PO Box 70,

Arkport, NY 14807-0070,

CLAIRE SMITH, 7950 NY-36 Arkport , NY 14807,

JESSE HARPER, 1285 Phelps Drive, Arkport NY 14807

4) The Plaintiffs have a child in common, namely J[redacted] V. S[redacted] who attends the Arkport Central School, and attended at the relevant time in question.

5) The basis for jurisdiction is that both the Plaintiff's residence and the Defendant,s physical location are located in Steuben County, New York, and the harm took place in the state of New York.

6) Defendants state that I/we were served with a 14 day notice via US mail. We received no such notice for failure to state a claim, lack of jurisdiction and a more definite statement. I did not respond because I did not receive the notice

7) I did receive the notice that the matter was reassigned to another judge but that did not give me the notice of the motion to dismiss, which I remain unaware of.

The Plaintiff has resided in New York for more than 2 years.

8) The events leading up to the punitive actions against the child in question took place in Allegany County, NY, however the harm to the child and the parents took place in Steuben County, NY. Thus Steuben County is the proper venue.

**FOR A FIRST CAUSE OF ACTION, VIOLATION OF CIVIL RIGHTS, [redacted] V. [redacted]**

9) [redacted] V. [redacted], a student at the Arkport Central School District was harmed in that his 1st Amendment Rights violated. The student punished for protected speech. The school has a policy practice or custom, which represents the actions of a final policy maker of the municipality. See student code of conduct p33k and M see attached

10) On 1/12/2024, [redacted] V. [redacted] was dismissed from school. He was suspended for saying "Beans,Brocolli, and Corn" while off school grounds, specifically: I am asserting a claim under SS 1983 see Ciaotto V Alderman, 709f appx 39,40 (2dcir 2017). It is their policy to punish on any allegation of racism no matter how meritorious or frivolous and even for out of school conduct. The school was acting out of an express adopted official policy. The district employee was acting pursuant to a long standing practice or cudtom and that district employee acted as final policy maker. Jesse Harper was the final policy maker stating at an in person meeting 1/17/2024 " It was at his sole discretion. Claire Smith through acts of omission or commission such punishing acts. This is an expressly adopted policy of the school district ( See handbook p33 K, M. This sole discretion was in writing from Jesse Harper Superintendent. The court's jurisdiction can be reinstated with the revival of the claim under 42 USC 1983. Plaintiff urges the court to revive this claim now that the complaint has been amended and a viable claim has been made

i. On or about 1/12/24 [redacted] V. [redacted] was on a ski lift at a commercial establishment known as Swain Resort located at 2275 County Road 24, Swain, NY 14884-9717 which is in Allegany County across the street from residential real property owned by his parents.

ii. The Arkport School District happened to have a ski event there for some students at the same time.

iii. [redacted] V. [redacted] was in no way a part of that excursion, he did not pay for any such excursion, he was not being supervised by school employees, volunteers or chaperons, nor did the school pay for

any part of [redacted] V. [redacted]'s activities.

iv. [redacted] V. [redacted] and some friends from school decided to ride a ski lift together where the Beans, Broccoli and Corn comment was made. These words do not fall under any exception to free speech protections.

v. For reasons that are still unclear, the school employee(s) deemed this comment to be racist resulting in the suspension noted above.

vi. There is considerable distance between the chair lifts, and the alleged "Victim"; is unlikely to have even heard the statement "Beans, Brocolli, and Corn".

11) Subsequent to this incident, [redacted] V. [redacted] was suspended from school for making the allegedly racist comment: "Beans, broccoli, and corn"

12) I, John Senka contacted/complained about my sons discipline/supension to/notified: Jesse Harperand Claire Smith who are employed by the school as Superintendent and principal.

13) On or about February 13, 2024 I went to an Arkport School District School Board meeting to address this issue. I did not receive any satisfaction.

14) Upon information and belief, [redacted] V. [redacted] was suspended He was "Around or in the Vicinity" of ACS Students, and was therefore was punished along with children who were on the school excusrison.

15) Whether on an excursion or not, and he was not, the phrase "Beans, Broccoli and Corn" is objectively not racist.

16) While I do not condone speech which is racist, and deny such speech occurred, such speech is protected speech under the first amendment.

17) The items of damage or injuries claimed to have been sustained so far as then practicable to determine are consultation fees for and attorney, further fees to hir an attorney, harm to repuation of the child and his parents, chilling effect on normal childish speech, trauma of a child being labeled a racist, loss of family income due to the loss of reputation, and other damages as set forth herein.

18) The defendants are liable for a violation of [redacted] V. [redacted]'s free speech rights.

FOR A SECOND CAUSE OF ACTION, NEGLIGENT STAFFING, NEGLIGENT SUPERVISION OF STAFF, FAILURE TO PROPERLY TRAIN STAFF:

19) I repeat and reiterate everything above as if set forth herein. Additionally The defendants are liable for, negligent staffing, negligent supervision of staff, failure to properly train staff, intentional tort, and

any other claim fitting the circumstances allowed by law, malicious prosecution and suspension, harm to the reputation of the child and his parents, all damages of which are estimated to be in excess of one million dollars potentially, depending on how long said harm continues.

20) The staff was negligently hired, trained and supervised because the suspended our son for saying "Beans, Brocolli, and Corn", alleging with absolutely no merit or evidence he is racist, and/or that he made a racist comment, and causing him and we as his parents great emotional anguish and loss of reputation for our son and for us as our reputation in the community which has been tarnished with allegations of racism.

21) John Senka has a small business in the community and in general people do not want to do business with racists. The court can take judicial notice of the generally known phenomena of "cancel culture" wherein a person believed to be racist is boycotted and finished career wise. This harm or potential harm is of unknown financial value at this time.

AND FOR A THIRD CAUSE OF ACTION SLANDER/LIBEL

22) I repeat and reiterate above everything as if set forth herein.

23) Saying someone is a racist is a very grave and serious matter. Our son and by extension our family was tarnished with this label because our son was suspended for saying "Beans, broccoli and corn" which the staff of the Arkport Central School District for reasons known only to them deemed racist and offensive, labeled J[redacted] V. S[redacted] as such and suspended him for his allegedly racist speech.

24) Being incorrectly labeled racist has cause J[redacted] V. S[redacted] irreparable harm to his reputation.

25) The parents of John V. Senka have irreparable harm to their reputation.

____________________________Date ______, 2024 _________________________Date ____, 2025

John Senka/Carola L. Dance

VERIFICATION

STATE OF NEW YORK

COUNTY OF STEUBEN

John Senka, being duly sworn, says that he is a plaintiff in the above-named proceeding and that he has read the the foregoing document, is true to his own knowledge, except as to matters therein stated to be alleged on information and belief and as to those-matters he believes it to be true.

John J. Senka

STATE OF NEW YORK

COUNTY OF STEUEBN

On the 11 day of July ,2025 before me came and appeared to me John J. Senka known and known to me to be the person who executed this AMENDED COMPLAINT and who acknowledged to me that he executed the same.

Notary Public

DANIELLE ASHLEY COOK
Notary Public, State of New York
Reg. No. 01CO0011982
Qualified in Steuben County
Commission Expires August 15, 20 27

VERIFICATION

STATE OF NEW YORK

COUNTY OF STEUBEN

Carola Dace, being duly sworn, says that she is a plaintiff in the above-named proceeding and that she has read the the foregoing document, is true to her own knowledge, except as to matters therein stated to be alleged on information and belief and as to those matters she believes it to be true.

Carola Dance

STATE OF NEW YORK

COUNTY OF STEUEBN

On the 11th day of July ,2025 before me came and appeared to me ~~Carol A. Dance~~ Carola L. Dance CD known and known to me to be the person who executed this Amended Complaint and who acknowledged to me that she executed the same.

Pamela Colomaio

Pamela L Colomaio
Notary Public, State of New York
No. 01CO6114443
Qualified in Steuben County
My Commission Expires
August 16, 20 28

parental relation to learn the nature of the pupil's absence and notify the parent that the pupil has not arrived at school.

1 copies

**Incentives**
District teachers shall work with the Building Principal and Attendance Clerk to create and implement classroom-based and school-wide incentive programs for excellent attendance, including but not limited to additional privileges.

**Intervention Strategy Development**
The Building Principal shall meet each marking period with the Attendance Clerk and other administrators and teachers as the Principal determines necessary to review student attendance records, address identified patterns of unexcused pupil absence, tardiness and early departure, and review current intervention methods. Where the Principal determines that existing intervention policies or practices are insufficient, the Principal shall notify the Board of Education prior to its annual review of the building's attendance records, of both insufficient practices and any proposed changes needing Board approval to implement.

**Counseling**
The District shall provide consistent counseling to students with chronic attendance problems.

**Attendance Clerk**
The Board shall designate a person as the Attendance Clerk. The Attendance Clerk is responsible for reviewing pupil attendance records and initiating appropriate action to address unexcused pupil absence, tardiness and early departure consistent with the Comprehensive Attendance Policy.

## Code of Conduct →

BOARD REGULATION AND MATERIAL FOR STUDENT HANDBOOK REGARDING MATTERS THAT COULD PRODUCE DISCIPLINARY ACTION

A student shall be subject to disciplinary action in relation to the following:

(a) Being under the influence of an alcoholic beverage, drinking an alcoholic beverage or in possession of an alcoholic beverage on school premises (including buildings or grounds) or on a bus going to or from a school function or a school-sponsored function. Alcoholic beverages shall mean and include alcohol, spirits, liquor, wine, beer and cider having alcoholic content.
(b) The use, possession, sale or gift of any drug or controlled substance, including marijuana or synthetic substance or any instruments for the use of such drugs, controlled substance or marijuana or synthetic substance such as a pipe, syringe or other paraphernalia, while on school premises (including buildings or grounds) or on a bus going to or from a school function or school-sponsored function. Excepted is any drug taken in accordance with a current prescription signed by a physician, which, is to be taken by the particular student at the time in question. Said prescription drug is to be administered under the direct supervision of the school nurse.
(c) Stealing, lying, cheating, plagiarism or other acts of dishonesty, including the use of generative AI.
(d) Verbal or physical intimidation.
(e) Fighting or causing physical harm to another.

(f) Disrespect toward a faculty member.
(g) Possession or use of a weapon, which constitutes a firearm or destructive device, on school premises. School premises include school grounds, school buildings, or a school bus.
(h) Possession or use of knives or other weapons not included in section (g) on school premises. School premises include school grounds, school buildings, or a school bus.
(i) Failure to comply with the directions of a teacher, administrator or other school employee.
(j) Engaging in acts of sexual harassment as defined in the District's sexual harassment policy.
(k) Provisions prohibiting discrimination and harassment against any student, by employees or students on school property or at a school function, that creates a hostile environment by conduct, with or without physical contact and/or verbal threats, intimidation or abuse, of such a severe nature that:
   i. has or would have the effect of unreasonably and substantially interfering with a student's educational performance, opportunities or benefits, or mental, emotional and/or physical well-being; or
   ii. reasonably causes or would reasonably be expected to cause a student to fear for his/her physical safety.
(l) Such conduct shall include, but is not limited to, threats, intimidation, or abuse based on a person's actual or perceived race, color, weight, national origin, ethnic group, religion, religious practices, disability, sexual orientation, gender as defined in Education Law Section 11(6), or sex; provided that nothing in this subdivision shall be construed to prohibit a denial of admission into, or exclusion from, a course of instruction based on a person's gender that would be permissible under Education Law Sections 3201-a or 2854(2) (a) and Title IX of the Education Amendments of 1972 (20 USC Section 1681, et seq.), or to prohibit, as discrimination based on disability, actions that would be permissible under 504 of the Rehabilitation Act of 1973.
(m) Using in either words, clothing, or signs, profane, lewd, vulgar, abusive language or words that may incite or offend another person.
(n) Selling, using or possessing obscene material.
(o) Lateness for, missing or leaving, school or class without permission of a staff member.
(p) Any willful act which, disrupts the normal operation of the school community.
(q) The use, possession, sale or gift of a cigarette, cigar or pipe, chewing or smokeless tobacco, or substitute/electronic cigarette on school premises (including buildings or grounds) or on a bus going to or from a school function or a school-sponsored function.
(r) Disrupting the educational process.
(s) Interfering with the teacher's authority over the classroom.
(t) Acting as a violent pupil.
(u) Vandalizes school property or the property of a student or staff member.
(v) Violates the civil rights of another student.
(w) Violates the district's dress code.

The range of penalties that may be imposed for the conduct set forth above is as follows:

(1) Verbal warning;
(2) Written warning;
(3) Written notification to parent;
(4) Counseling;
(5) Probation;
(6) Reprimand;
(7) Detention;
(8) Suspension from transportation;
(9) Suspension from athletic participation;
(10) Suspension from social or extracurricular activities;
(11) Suspension of other privileges;

ARKPORT CENTRAL SCHOOL

## NOTICE OF OUT OF SCHOOL SUSPENSION (OSS)

Date: January 17, 2024

To: Student: Johnny Senka
Parent(s)/Guardian(s): John Senka and Carola Dance

You are hereby advised that your child is suspended out-of-school in relation to the following infractions:

**Incident Description:**

On Friday, January 12, During the Day:

- It was brought to my attention that Johnny had been using the acronym BBC asking students if they knew what it meant and betting them a $1.00 they didn't.
- Upon questioning Johnny with Mr. Marcus, he admitted to saying the acronym and asking students if they knew what it meant. When asked if he knew what it meant, he said "British Broadcasting Company". When asked if there was another definition, he replied, "Yes, big black cock ".
- He admitted to saying it in the halls to other students with the caveat that it was referring to the "British Broadcasting Company".
- When asked if he knew that this was offensive to other students, knowing that there is an inappropriate definition of BBC as well, he replied "Yes". We discussed and inappropriate, and that the term, regardless of intention, was not to be used.

On Friday, January 12, That Night at Swain:

- While at Swain with other Arkport students who were there on a Ski Club visit, it was reported to one of the chaperones that Johnny had been saying inappropriate things on the ski lift when students of certain races/ skin color were nearby.
- It was reported that he was asking students what they like to have with his steak dinner, saying "beans, broccoli, and corn", along with the phrase "BBC" again.

ARKPORT CENTRAL SCHOOL

**Such action violates the following section(s) of the code(s) of conduct:**

l) Such conduct shall include, but is not limited to, threats, intimidation, or abuse based on a person's actual or perceived race, color, weight, national origin, ethnic group, religion, religious practices, disability, sexual orientation, gender as defined in Education Law Section 11(6), or sex; provided that nothing in this subdivision shall be construed to prohibit a denial of admission into, or exclusion from, a course of instruction based on a person's gender that would be permissible under Education Law Sections 3201-a or 2854(2) (a) and Title IX of the Education Amendments of 1972 (20 USC Section 1681, et seq.), or to prohibit, as discrimination based on disability, actions that would be permissible under 504 of the Rehabilitation Act of 1973.
(m) Using in either words, clothing, or signs, profane, lewd, vulgar, abusive language or words that may incite or offend another person.
(p) Any willful act which, disrupts the normal operation of the school community.

**Incident Investigation:**
Based on student admitting action, speaking with bystanders, speaking with other participants, and using administrative judgement based on presented information.

**The basis for the proposed suspension was determined**
The student has been presented with an explanation of the basis of the proposed suspension, based on information provided above.

Dates of Suspension: 1/18/2024-1/22/2024 (3 days of out of school suspension)

Your child is eligible to return to school on 1/23/2024.

During the period of suspension, the student will remain out of the school building, off school grounds, and is not allowed to attend any before- or after-school activities.

PLEASE NOTE: **Before Out-of-School Suspension takes place, you are hereby given an opportunity for an informal conference with the building administrator regarding the incident and resulting suspension.** In addition, you may question complaining witnesses if such interaction would not jeopardize the well-being (emotional or physical)

ARKPORT
CENTRAL SCHOOL

of such witnesses. If you desire an informal conference, please contact the main office at 607-295-7471 x1140 between the hours of 8 a.m. and 4 p.m. If there is no answer, please leave a message and I will return your call.

Claire Smith

Mrs. Claire Smith, PK-6 Principal

Notification: In-person / Phone call (circle one)
Person notified: John Senka
Date: 1/17/24

cc: Mrs. Coddington (and Ms. Dwyer if classified CSE)

(5) threatens, while on school district property, to use any instrument that appears capable of causing physical injury or death;
(6) knowingly and intentionally damages or destroys the personal property of a teacher, administrator, other school district employee or any person lawfully upon school district property; or
(7) knowingly and intentionally damages or destroys school district property.

The term "school function" is defined as:
All events sponsored by the school district, including for example, extra-curricular activities such as sporting events, dances and theatrical events. Students are at a school function and therefore subject to the district's code of conduct whenever they are at any place as part of their assigned school activities. For example, this includes classes at BOCES or other campuses, as well as class field trips and any event in which the student is participating as a student of the school district.

The term "disruptive pupil" is defined as:
A disruptive pupil is an elementary or secondary student under twenty-one years of age who is substantially disruptive of the educational process or substantially interferes with the teacher's authority over the classroom.

A teacher may remove a disruptive student from the classroom for a period not to exceed five class days in relation to (p) or (q).

School property or school premises means in or within any building, structure, athletic playing field, playground, parking lot, or land contained within the real property boundary line of the schools of the district or in or on a school bus.

**Dress Code**

All students are expected to give proper attention to personal cleanliness and to dress appropriately for school and school functions. Students and their parents have the primary responsibility for acceptable student dress and appearance. Teachers and all other district personnel should exemplify and reinforce acceptable student dress and help students develop an understanding of appropriate appearance in the school setting.

A student's dress, grooming and appearance, including hair style/color, jewelry, make-up and nails shall:

1. Be safe, appropriate and not disrupt or interfere with the educational process.
2. Recognize that extremely brief garments such as tube tops, net tops, halter-tops, spaghetti straps, plunging necklines, (front and/or back), see through garments, and items which expose the midriff are not appropriate.
3. Recognize that tank top straps will have a minimum width of 1 inch.
4. Recognize that shorts need to have a 7 inch inseam and skirts a length of 18 inches both of which should be at least mid-thigh or they are considered inappropriate.
5. Ensure that underwear is completely covered with outer clothing.
6. Include footwear at all times. Footwear that is a safety hazard will not be allowed.
7. Hats are allowed in the school at the discretion of each individual teacher- should a teacher request a student remove their hat in the classroom, that student should abide by that teacher's classroom rule.
8. Not include items that are vulgar, obscene, libelous or denigrate others on account of race, color, religion, creed, national origin, gender, sexual orientation or disability.
9. Not promote and/or endorse the use of alcohol, tobacco or illegal drugs and/or encourage other illegal or violent activities.
10. Not include the wearing of outerwear (coats and jackets) in the classroom and/or in other areas of common assembly.

Copy

ARKPORT CENTRAL SCHOOL

February 16, 2024

John Senka
PO Box 122
Kanona, NY 14856

Dear Mr. Senka:

This letter is in response to your email dated 2/12/24.

During our discussion on 1/17/24 regarding your son's (Johnny) out-of-school suspension, I stated I supported Mrs. Smith's determination of events and disciplinary consequences. My support for Mrs. Smith was based on the information provided to you in Johnny's Notice of Suspension Letter, dated January 17, 2024 (Attached).

In regards to our February 8 meeting, I again direct your attention to the Arkport CSD Code of Conduct, which prohibits students from engaging in behaviors or conduct that disrupt the educational process. With regard to student speech, the School District is permitted to address speech that is harmful to others, disruptive to the educational process, or could reasonably be expected to disrupt the educational process.

Additionally, with respect to your request for educational records, you received the attached letter from Principal Claire Smith discussing your parental rights under the Family Educational Rights and Privacy Act ("FERPA"), which allows you to come to the District at an agreed upon date and time to inspect and review such records. The District is under no legal obligation to provide you with copies of the records. You may reach out to Ms. Smith's office to schedule a time for you to come to the District for a review of records.

I hope the above information is of assistance to you in regard to your repeated correspondence to my office. Moving forward, I will respond to your inquiries as required or necessary under law or School policy, but you should not expect responses to every correspondence, and the District is under no obligation to respond to interrogatories. I am always happy to schedule a time to meet in person to discuss issues related to your child's education, and you may contact the District Office in order to facilitate any meeting.

Respectfully,

Jesse Harper

Jesse Harper
Superintendent of Schools

cc: PK-6 Principal
7-12 Principal