UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JOHN SENKA, et al.,

Plaintiffs,

vs.

ARKPORT CENTRAL SCHOOL DISTRICT,
CLAIRE SMITH, and
JESSE HARPER,

Defendants.

---

DECISION AND ORDER

6:24-CV-6252-MAV

Plaintiffs John Senka and Carola Dance, on behalf of themselves and their minor child, J.V.S., filed this action pro se against the Arkport Central School District ("Arkport") in the New York State Supreme Court for the County of Steuben on April 9, 2024. ECF No. 1-2. On June 17, 2025, this Court granted Defendants' motion to dismiss and granted Plaintiffs leave to amend their complaint. ECF No. 7.

On July 16, 2025, Plaintiffs filed the amended complaint. ECF No. 8. The amended complaint reiterates the three causes of action from the original complaint: (1) violation of J.V.S.'s First Amendment rights; (2) negligent hiring, training, and supervision; and (3) "slander / libel." *Id.*

The matter is presently before the Court on Defendants' motion to dismiss for failure to state a claim filed on July 29, 2025. ECF No. 9. For the reasons that follow, Defendants' motion to dismiss Plaintiffs' amended complaint is granted.

**I. Factual Allegations**

The following facts are taken from Plaintiffs' pleadings, which the Court

accepts as true for the purpose of ruling on the motion to dismiss. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). Furthermore, "in a motion to dismiss, a court may 'consider documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, or . . . documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.'" *Id.* at 153 (alteration in original) (quoting *Brass v. American Film Techs.* 987 F.2d 142, 150 (2d Cir. 1993)).

There are several exhibits attached to the amended complaint including: the notice of suspension, the student code of conduct, and the February 16, 2024 letter from Superintendent Harper to Plaintiff Senka. ECF No. 8 at 7–13.[1] These documents are incorporated by reference in the amended complaint. *Chambers*, 282 F.3d at 153. As Plaintiffs attached these documents to the amended complaint and referenced them therein, there is sufficient notice and reliance on the exhibits to consider these documents when deciding the current motion to dismiss without converting the motion to one for summary judgment under Federal Rule of Civil Procedure 56. *Id.* at 153–54.

Plaintiffs John Senka and Carola Dance reside in Bath, New York. ECF No. 8 at 1. Plaintiffs Senka and Dance have a child in common, J.V.S., who attended Arkport Central School during the relevant time. *Id.* at 1. On January 12, 2024, Arkport held an event for some students at an area ski resort. *Id.* at 2. On that same

[1] The page numbers cited in this Decision and Order refer to the pagination inserted by the Court's CM/ECF system in the upper right-hand corner of the document.

date, J.V.S. was also at the ski resort, though he was in no way part of Arkport's event. *Id.* at 2–3.

The amended complaint alleges that, while J.V.S. was riding on a ski lift with friends at the resort, someone made the comment, "Beans, Broccoli, and Corn," apparently directed at another student. *Id.* at 3. Due to distance between the chairs on the lift, Plaintiffs believe it unlikely that the alleged target of the comment even heard it. *Id.* at 3. Nevertheless, school employees present at the event "deemed this comment to be racist." *Id.* at 3.

After the incident, J.V.S. was suspended from school for making the allegedly racist comment: "Beans, Broccoli, and Corn" in violation of the school's code of conduct. *Id.* at 3, 9–10. The amended complaint explicitly references the reasons stated for J.V.S.'s suspension in the notice of suspension. *Id.* at 2 (J.V.S. was dismissed from school. He was suspended for saying 'Beans,Brocolli,[sic] and Corn' . . ."). The amended complaint also specifically cites the student code of conduct, Sections K and M. *Id.* Plaintiffs believe J.V.S. was suspended because he was "around or in the vicinity" of Arkport students, "and was therefore punished along with children who were on the school excursion." *Id.* at 3.

Plaintiffs state that on January 17, 2024, at an in-person meeting regarding J.V.S.'s suspension, Superintendent Jesse Harper stated "[i]t was at his sole discretion." *Id.* at 2. This meeting is also addressed in the February 2024 letter attached to the amended complaint and referenced therein, where Plaintiffs state "[t]his sole discretion was in writing from Jesse Harper Superintendent." *Id.*

Plaintiffs allege they suffered harm in the form of attorney fees, harm to reputation of both child and parents, a chilling effect on J.V.S.'s speech, and loss of family income due to loss of reputation. ECF No. 8 at 3.

## II. Legal Standard

The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "is to test . . . the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits." *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006) (emphasis omitted). An action must be dismissed under Rule 12(b)(6) "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). To survive a motion to dismiss under Rule 12(b)(6), on the other hand, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Where a plaintiff's factual allegations are "merely consistent with" a defendant's liability, those allegations "stop[] short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557). Moreover, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398 (2d Cir. 2006) (citation and internal

quotation marks omitted). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Courts are obligated to construe a pro se complaint liberally, to state the strongest arguments it suggests. *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). Nevertheless, though the court is obligated to draw the most favorable inferences that a pro se plaintiff's complaint supports, the court "cannot invent factual allegations that he has not pled." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).

## III. Discussion

### A. Plaintiffs' First Amendment Claim

As stated in this Court's June 17, 2025 Order granting Defendants' first motion to dismiss (ECF No. 7), Plaintiffs' First Amendment claim should be construed as asserting a claim under § 1983. *See, e.g., Cinotti v. Adelman,* 709 F. App'x 39, 40 (2d Cir. 2017) (stating that the district court should have construed the pro se plaintiff's First Amendment claim as a § 1983 claim, even though "the complaint does not refer to 42 U.S.C. § 1983"). "School districts . . . are considered municipal entities that can be sued under § 1983." *Doe by & through Doe v. E. Irondequoit Cent. Sch. Dist.*, No. 16-CV-6594 (CJS), 2018 WL 2100605, at *16 (W.D.N.Y. May 7, 2018) (citing *Watson v. Sims*, 648 F. App'x 49, 52–53 (2d Cir. 2016)). As a result, Plaintiffs' First Amendment claim must be analyzed under the standard for municipal liability set forth in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).

"A municipality may not be held liable under § 1983 solely on the basis of

*respondeat superior*." *McGee v. Doe*, 568 F. App'x 32, 41 (2d Cir. 2014), *as amended* (July 2, 2014). Rather, "to establish municipal liability, 'a plaintiff must show that the violation of his constitutional rights resulted from a municipal custom or policy.'" *Id.* (quoting *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998)). "A school district's liability under *Monell* may be premised on any of three theories: (1) that a district employee was acting pursuant to an expressly adopted official policy; (2) that a district employee was acting pursuant to a longstanding practice or custom; or (3) that a district employee was acting as a 'final policymaker.'" *Casler v. W. Irondequoit Sch. Dist.*, 563 F. Supp. 3d 60, 71 (W.D.N.Y. 2021) (citing *Hurdle v. Bd. of Educ. of City of New York*, 113 F. App'x 423, 424–25 (2d Cir. 2004)).

Plaintiffs do not premise their claims against Arkport on either of the first two theories of *Monell* liability. Although Plaintiffs state that "[t]he school was acting out of an express adopted official policy" they have not alleged what the expressly adopted official policy is. ECF No. 8 at 2. Plaintiffs, likewise–despite stating that "[t]he district employee was acting pursuant to a long standing [sic] practice or cudtom [sic]"–have not specifically alleged any employee acting on a longstanding practice or custom. *Id.* Instead, Plaintiffs premise Arkport's *Monell* liability on Superintendent Harper acting as the final policymaker. *Id.*

"The Supreme Court has stated that 'whether a particular official has final policymaking authority is a question of *state law*.'" *Hurdle*, 113 F. App'x at 425 (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988)). When determining whether an individual is a policymaker under *Monell*, "the official in question need

not be a municipal policymaker for all purposes." *Id.* Instead, with respect to the conduct challenged, the official must be "'responsible under state law for making policy *in that area* of the [municipality's] business,' or must 'have the power to make official policy *on a particular issue*' or must 'possess[ ] final authority to establish municipal policy *with respect to the action ordered.*'" *Id.* (quoting *Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000) (citations omitted)).

However, "[i]t is not enough that an official had discretion to make a decision that was unreviewable." *Agosto v. N.Y.C Dep't of Educ.*, 982 F.3d 86, 98 (2d Cir. 2020). "[E]ven when the official 'is the apex of bureaucracy,' that merely 'makes the decision final but does not forge a link between finality and policy.'" *Id.* at 101 (quoting *Hurdle*, 113 F. App'x at 427) (internal quotations omitted).

Plaintiffs point to no state authority indicating that a superintendent or principal "possesses[ ] final authority to establish [Arkport Central School District's] municipal policy" with respect to suspending students for code of conduct violations. *Jeffes*, 208 F.3d at 57. "When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality." *City of S. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). "[B]y equating a final decisionmaker with a final policymaker, [Plaintiffs'] approach would effectively impose *respondeat superior*–liability–making the municipality liable for the conduct of its employees–in violation of *Monell* itself." *Agosto*, 982 F.3d at 100.

It is true that under New York Education Law § 3214(3)(a), the

superintendent of schools and the principal of a school are two of the authorities who may suspend a student for disorderly or disruptive behavior or for conduct that "otherwise endangers the safety, morals, health or welfare of others." N.Y. Educ. Law § 3214(3)(a). However, this provision namely vests the principal and superintendent with the discretion to make certain final decisions; it does not make them policymakers. *Agosto*, 982 F.3d at 98. Here, Plaintiffs allege that "school employee(s) deemed [J.V.S's] comment to be racist resulting in the suspension . . . ", and the notice of suspension cites J.V.S.'s comments of "beans, broccoli, and corn" as violations of the code of conduct under the following provisions:

> (l) . . . threats, intimidation or abuse based on person's actual or perceived race, color, weight, national origin, ethnic group, religion, religious practices, disability, sexual orientation, gender as defined in Education Law Section 11(6), or sex. . . .
>
> (m) Using in either words, clothing, or signs, profane, lewd, vulgar, abusive language or words that may incite or offend another person.
>
> (p) Any willful act which, disrupts the normal operation of the school community.

ECF No. 8 at 3, 10.

In other words, Plaintiffs asserted facts show that J.V.S.'s suspension was the result of alleged violations of the school's code of conduct. I*d.* at 2–3. Under New York Education Law § 2801, the board of education or trustees of a school district "shall adopt and amend as appropriate, a code of conduct for the maintenance of order on school property, including a school function . . . and shall provide for the enforcement thereof." N.Y. Educ. Law § 2801(2).

Under New York law, neither Superintendent Harper nor Principal Smith

were responsible for creating the code of conduct. Instead, the board of education or trustees of the school district are responsible for setting policy as to what conduct can result in suspension. N.Y. Educ. Law § 2801(2).

Plaintiffs allege "Jesse Harper was the final policy maker [sic]. . ." and that at an in-person meeting on January 17, 2024, Harper said "[i]t was at his sole discretion." ECF No. 8 at 2. However, Harper's discretion to suspend J.V.S. for his conduct and final decision-making as to a suspension do not make him the final policymaker with regards to the student code of conduct. Instead, it is the board of education for the district that sets final policy as to the student code of conduct and disciplinary measures for its violation.

Accordingly, Defendants' motion to dismiss Plaintiff's First Amendment claim for failing to state a claim is granted.

**B. Plaintiffs' State Law Claims**

With no further claims remaining under federal law, the Court declines to exercise supplemental jurisdiction over Plaintiffs' second and third causes of action: (2) negligent hiring, training, and supervision, and (3) slander / libel. ECF No. 8 at 3–4.

The Court has an obligation to examine its subject matter jurisdiction *sua sponte*. *See, e.g., U.S. Liab. Ins. Co. v. M Remodeling Corp.*, 444 F. Supp. 3d 408, 409 (E.D.N.Y. 2020) (citing *Joseph v. Leavitt*, 465 F.3d 87, 89 (2d Cir. 2006)). Because Plaintiffs' claim under 42 U.S.C. § 1983 is dismissed, the Court no longer has federal question jurisdiction in this case under 28 U.S.C. § 1331. *See* 28 U.S.C. § 1331 ("The

district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). Further, there is no diversity between the parties sufficient to justify jurisdiction under 28 U.S.C. § 1332.

Thus, the only basis for the Court's exercise of jurisdiction over Plaintiffs' state common law claims would be supplemental jurisdiction under 28 U.S.C. § 1367. The Second Circuit has stated that, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Spring v. Cnty. of Monroe, N.Y.*, 103 F. Supp. 3d 361, 366 (W.D.N.Y. 2015) (quoting *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003)). After considering the relevant factors – including judicial economy, convenience, fairness and comity – the Court finds that those interests are best served by declining to exercise supplemental jurisdiction here.

Accordingly, Plaintiffs' second and third causes of action are also dismissed.

**CONCLUSION**

For the foregoing reasons, it is hereby,

ORDERED that the Defendants' motion to dismiss ECF No. 9 is GRANTED.

SO ORDERED.

Dated: October 21, 2026
Rochester, New York

ENTER:

HON. MEREDITH A. VACCA
United States District Judge